R. G. Bock v. Commissioner.
R. G. Bock v. Commissioner
Docket No. 21925.
United States Tax Court
1950 Tax Ct. Memo LEXIS 118; 9 T.C.M. (CCH) 709; T.C.M. (RIA) 50203; August 21, 1950
Charles A. Boyle, Esq., and John B. Stephan, Esq., for the petitioner. George T. Donoghue, Jr., Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in the petitioner's income tax for 1943 and 1944 in the respective amounts of $46,816.24 and $54,052.42. The issues for decision are as follows: 1. Whether the Commissioner erred in determining that the petitioner's former wife, Cecile M. Leppla (hereafter called Cecile) was not recognizable as a partner for tax purposes and that that part of the partnership income credited to their joint account and reported by her is taxable to the petitioner. 2. Whether the Commissioner erred in disallowing deductions claimed as ordinary and necessary business expenses under *119 section 23 (a) in connection with the operation and maintenance of a farm. 3. Whether the Commissioner erred in disallowing portions of deductions claimed as ordinary and necessary business expenses under section 23 (a) for automobile expenses, advertising and sales promotion, entertainment, Christmas expenses, staff meeting expenses, association and club dues and traveling expenses. Findings of Fact The petitioner and his former wife, Cecile, were married on September 29, 1923. They have one child, an adopted son, who was born in 1929. They were divorced on October 27, 1945. The petitioner's income tax returns for the years involved herein were filed with the collector of internal revenue for the first district of Illinois. The petitioner has been a management engineer since 1921. He was employed in that capacity by at least six different firms during the years 1921 to 1938 and was also engaged in several small business ventures during the same period, both for himself and as a partner with others. Cecile is a high school graduate. She has had no formal training or experience in accounting, management engineering, or business administration. She was employed as a stenographer *120 and relief switchboard operator by a firm of certified public accountants for three years prior to her marriage to the petitioner. She worked in the "systems" department of that firm where she handled correspondence and wrote up reports and charts. Her only employment after marriage and until 1938 was temporarily by an accounting firm for a few weeks in 1924 and again in 1925. The petitioner was in business for himself as a management engineer in the summer of 1938, but this business failed and his finances were in poor condition. He obtained employment in October 1938 with an engineering firm in Cleveland, Ohio, at a salary of $275 per month. The petitioner lived in a hotel in Cleveland and every week or two returned to Chicago for the weekend. Cecile, meanwhile, remained in Chicago where they continued to maintain a home. This situation continued until the petitioner was discharged by his employer on February 28, 1939. The petitioner reported total income of $2,696.18 from salaries and professional earnings for 1938. The petitioner returned to Chicago on one of his regular visits in October 1938 and showed Cecile a booklet entitled "Trundle Talks," a series of talks on industrial *121 management prepared by his employer, the Trundle Engineering Company. Cecile suggested the idea of preparing "Bock Talks" on industrial management. She and the petitioner discussed at that time the possibility of starting a management engineering business and publishing the so-called "Bock Talks" as a means of obtaining business. The petitioner thereafter made up a list of subjects to be covered in the talks. They decided to prepare a series of twelve talks which were to be mailed to subscribers once a month for a year. The subscriptions were to cost $22.50 and were to be paid for in advance in order that sufficient funds might be obtained to cover the costs of publication. The petitioner wrote drafts of Talk No. 1 while still employed in Cleveland and mailed them home for Cecile to type and revise. She made changes in arrangement and minor revisions before mailing them back to the petitioner. He would bring the drafts with him each time he returned to Chicago and there he and Cecile would go over them together. She did all of the typing and when an acceptable draft was decided upon she had it multigraphed, assembled the sheets and mailed them out. A small office was set up in *122 the petitioner's home sometime in the latter part of 1938 or early 1939. There Cecile handled all office work and assisted in the preparation and editing of the first talk and the letter which accompanied it. She also secured mailing lists, addressed envelopes for mailing, attended to all correspondence and hired the first employee. She corresponded with the petitioner in Cleveland describing her activities in detail and making suggestions as to the business. The "Bock Talks" consisted of twelve lectures on the technical aspects of industrial management. The petitioner wrote eight of these talks, and the remaining four were prepared by two industrial engineers and a certified public accountant. Cecile contributed little to the preparation of the talks after the first one. Two sets of the talks were sold in December 1938, at which time only the first talk had been prepared. Three sets were sold in January 1939, five in February 1939, and 24 additional sets throughout the remainder of that year. The petitioner and Cecile on or about January 3, 1939, executed a written partnership agreement which had been prepared in longhand by the petitioner. This agreement was duplicated in a typewritten *123 instrument prepared by an attorney and signed by the petitioner and Cecile sometime in February 1943. This formal partnership agreement, although prepared in 1943, was dated January 3, 1939, the date of execution of the original longhand instrument. It provided in part as follows: "WHEREAS, the said parties hereto desire to engage in the business of management engineering, and "WHEREAS, the said parties desire to conduct said business as a partnership, "NOW, THEREFORE, * * *, it is agreed and understood: "1. That the name of the partnership shall be R. G. BOCK ENGINEERS. "2. That the term of the partnership shall begin as of the date hereof and continue until dissolved by action of the parties or by operation of law. "3. The capital of the partnership shall be such sum as the parties hereto find necessary and each party shall contribute thereto equally, but no contribution to the capital of the partnership shall bear interest. "4. That each of the parties hereto shall devote such of his or her time and attention to the business of the partnership, as they deem necessary. "5. That a full and accurate set of books and records shall be kept by the partnership and each *124 party shall cause to be entered therein, a full and accurate account of all of his or her transactions in behalf of the partnership, and said books and records shall be kept at the place of business of the partnership, and each party shall, at all times, have access to, and may inspect and copy any of them. "6. That each of the parties hereto shall be entitled to draw $ per week from the funds of the partnership as salary. "7. That neither party shall, without the written consent of the other party, make, execute, deliver, endorse, or guarantee any commercial paper, nor agree to answer for, or indemnify against any act, debt, default, or miscarriage of any person or persons or corporations, other than that of the parties hereto. "8. That the capital of the partnership and any and all income and moneys of the said partnership or instruments for the payment of money to the partnership shall be deposited in the name of the partnership in such bank as the parties hereto may from time to time agree upon, and all moneys credited therein to the partnership shall be subject to withdrawal only by check made in the name of the partnership and signed by either of the parties hereto. *125 "9. (a.) That at the end of each calendar year a full and accurate statement of the assets and liabilities of the partnership shall be prepared together with a statement of both the gross and net income, and the net profits or net loss of the partnership shall be ascertained, fixed and determined. (b.) That the net profits or net loss shall be divided equally between the parties hereto, and the account of each shall be credited or debited as the case may be, with his proportionate share thereof. "10. That in the event this partnership is terminated by action of the parties hereto, after payment of all partnership debts and liabilities, all the remaining assets of the partnership shall be divided between the parties hereto share and share alike. "11. That each of the parties hereto shall cause wills to be made directing his or her executor, executrix, or other legal representative to assign to the surviving partner all of his or her rights and interest in and to the partnership and any assets thereof or monies due them therefrom existing at the time of his or her death and the surviving partner shall have the right to continue to conduct the said business under the name of the *126 partnership without liquidation of the partnership affairs and shall be entitled to the good will of the partnership and the surviving partner shall thereafter be entitled to all the net profits and shall bear all the net losses that may thereafter be earned or sustained." * * *
The following initial entry signed by the petitioner and Cecile was made in the special journal of R. G. Bock Engineers on or about January 3, 1939: Accounts Explanation
Dr.
Cr.
Petty Cash
$ 10.00
Office Furn. and Fixt
50.00
Library
500.00
Automobile
100.00
Stationery
50.00
R. G. Bock Talks Plan Ma-
terial in Files
10,000.00
Investment Accounts
R.G.B.
$3,750.00
C.M.B.
3,750.00
J.D.B.
3,750.00 To open the books of the R.C.J. Bock partnership this third day of January 1939. Signed by the partners R - R. G. Bock
C - C. M. Bock
J - (upon reaching his majority) * to operate as R. G. Bock Engineers applied management with principal place of business at 5855 Roscoe St., Chicago, Illinois. The petty cash referred to in the foregoing journal entry represented money which the petitioner had earned and given Cecile. The furniture *127 and fixtures were a small desk and portable typewriter which had been in their home for a number of years. The library was an accumulation of the petitioner's books; the automobile was a family car; and the stationery had been purchased by the petitioner in 1938 when he was in business for himself. The item "R. G. Bock Talks Plan Material in files, $10,000" had no real value. The "J.D.B." referred to in the foregoing journal entry was the adopted son of the petitioner and Cecile. They never intended that he should be a partner in R. G. Bock Engineers at any time during the years 1939 to 1944, inclusive. The amount of $1,000 was recovered from a former employer of the petitioner on January 6, 1939, partly through the efforts of Cecile. She and the petitioner borrowed $200 from her brother sometime in April 1939, which loan was subsequently repaid. Neither sum is reflected in the capital account of R. G. Bock Engineers. Cecile had practically no assets of her own as of January 3, 1939. She had no separate bank account and owned no securities. She made no contribution of capital at any time to the partnership of R. G. Bock Engineers. Capital was not an income producing factor in *128 the business. The first client of R. G. Bock Engineers was obtained in Paril 1939. The petitioner had supplied his bank with a copy of "Bock Talks" and the bank suggested a corporation which might be interested in securing management engineering services. The petitioner sold this corporation a set of the talks and the corporation engaged R. G. Bock Engineers to make survey of its business. An industrial engineer, E. W. Noakes, was then hired by the petitioner and his wife to assist the petitioner in making the survey. Noakes and the petitioner wrote up the survey for the first client and then proceeded to render engineering services to that client for several months at the rate of $50 per day per man. The next order for engineering services was received in July and the petitioner worked on that job alone for two or three weeks at the rate of $60 per day. The second order was likewise obtained through the medium of "Bock Talks". Noakes was made chief engineer about that time and thereafter hired other engineers and supervised their work. The petitioner started devoting his full time to the business on or about March 1, 1939, and continued to do so throughout the taxable years. The *129 petitioner performed no actual engineering services of any consequence after 1939. The books of R. G. Bock Engineers were kept by the petitioner during the first year or two of the partnership, but Cecile made a considerable number of entries in the general ledger up to and including October 31, 1939. The office of R. G. Bock Engineers was moved from the petitioner's home to another location at sometime in 1940. Cecile rendered no services of any consequence to the partnership after their son returned from boarding school with scarlet fever in the fall of 1939. The first two clients of R. G. Bock Engineers were informed that Cecile was a partner. Partnership business cards were printed in 1941 describing Cecile as a general partner. The petitioner and Cecile filed a joint income tax return for 1939. A net profit of $5,778.15 of R. G. Bock Engineers was reported in Schedule D, profit from business or profession. On the face of the return $4,443.27 of this sum was shown as salary and $1,334.88 as income from profession. No income was reported as partnership income. They likewise filed a joint return for 1940 stating that they were operating as R. G. Bock Engineers. The amount *130 of $8,187.87 was listed in Schedule D as salary paid the petitioner by R. G. Bock Engineers and $3,032.67 was listed as net profit of R. G. Bock Engineers. It was not shown that Cecile received any salary. No partnership returns were filed for 1939 or 1940. Partnership returns were filed for the years 1941 to 1944, inclusive. The petitioner and Cecile filed separate returns for the years 1942 to 1944, inclusive, reporting income from R. G. Bock Engineers as follows: 1942
1943
1944
Petitioner
$37,243.65
$47,169.48
$58,549.45
Cecile
37,243.65
47,169.48
58,549.45 Cecile did not file a return for 1945. All Federal income tax payments were charged against the joint capital account. The petitioner and Cecile had a joint account in a Chicago bank in 1939. Cecile signed three checks drawn on that account in January 1939 in payment for business supplies purchased by the partnership. A partnership bank account was opened on August 21, 1939, in the name of R. G. Bock Engineers in another Chicago bank. Both the petitioner and Cecile were authorized to draw on that account. Cecile drew one check in 1939 to pay for partnership supplies, ten payroll checks *131 on February 11, 1942, checks for her Federal income tax for the years 1941 to 1944, inclusive, and one check for her personal use in June 1945 after she had left the petitioner. All other checks drawn on this account were signed by the petitioner. A second partnership bank account was opened in November 1941 at another Chicago bank. Cecile drew one check for her own personal use on that account. Checks were issued payable to Cecile at frequent but irregular intervals prior to April 1942, for small amounts. Those checks were signed by the petitioner and were drawn on either the partnership accounts or their joint checking account. Cecile opened her own personal bank account sometime early in 1942 to which the petitioner made weekly deposits of $50 and later of $75. Those deposits were made by checks drawn on the partnership account, signed by the petitioner and made payable to Cecile's personal account. The petitioner had no access to that account, and the amounts deposited therein were used primarily for Cecile's personal expenses rather than for household goods. A joint drawing account was maintained in the general ledger of R. G. Bock Engineers during the period from January 31, 1939 to *132 May 31, 1943, under the caption "Joint Drawing Account - R.G.B.-C.M.B.-J.D.B." From May 31, 1943 to November 30, 1944, it was captioned "Joint Drawing Account" and from November 30, 1944 to September 30, 1945, it was captioned "Joint Drawing Account - R.G.B. & C.M.B." Drawings were charged against the account as a whole rather than to the petitioner or Cecile individually. There were three capital accounts in the general ledger of R. G. Bock Engineers during the period from January 3, 1939 to December 31, 1941, one each for the petitioner, Cecile and their son. The partnership profits during that period were not credited to the separate capital accounts of the petitioner, Cecile and their son, the opening credit balances in those accounts remaining unchanged. The capital account in the general ledger of R. G. Bock Engineers during the period from January 1, 1942 to September 30, 1945 bore the title "Investment Account - R.G. & C. M. Bock." Capital was credited to the petitioner and Cecile jointly rather than separately in that account. It was impossible to ascertain from an inspection of the account the respective interests of either partner. The petitioner invested a substantial *133 amount of the partnership profits in Government bonds during the taxable years. Some of the bonds were issued in the joint names of the petitioner and Cecile while others were issued in the joint names of Cecile and their son. Cecile knew that the petitioner was investing partnership profits in Government bonds but she did not know the exact amount of the investments. Cecile made no separate investments of the partnership profits. There was no division or distribution of the profits as between the petitioner and Cecile during the years 1939 to 1944, inclusive. Cecile moved out of the petitioner's home on June 13, 1945 and later that summer informed him that she wanted a divorce. She filed a complaint for separate maintenance on August 31, 1945, in the Circuit Court of Cook County, Illinois, in which she stated that she was a partner in R. G. Bock Engineers, and that it was through the joint efforts of both partners that the business had grown and prospered. She subsequently dismissed her suit for separate maintenance and filed a complaint for divorce on October 1, 1945. A settlement agreement was executed by Cecile and the petitioner on October 1, 1945, providing, inter alia, that *134 the petitioner pay her $50,000 in complete satisfaction and discharge of all her rights, both legal and equitable, including alimony, homestead and jointure, when a decree of absolute divorce was granted. Articles of partnership dissolution were executed by Cecile and the petitioner on September 30, 1945, providing in part as follows: * * *
"WHEREAS, on the 3rd day of January, A.D. 1939, at Chicago, Illinois, the parties hereto entered into an agreement in writing, whereby they formed the partnership of R. G. BOCK ENGINEERS to engage in the business of Management Engineering; and * * *
"WHEREAS, the said CECILE M. BOCK has signed notification to all the partnership depositories to the effect that her interest in the partnership has ceased and terminated as of this date, and her authorization to sign checks disbursing partnership funds * * * is hereby terminated; and "WHEREAS, the said CECILE M. BOCK agrees not to re-enter the Management Engineering business for a period of one (1) year in the Chicago area, but does agree to give her full and complete cooperation and help in establishing her interest in the copartnership in relation to any contingent tax liability *135 that may arise from the processing of the 1942, 1943, 1944, and 1945 Federal Income Tax Returns - representation having been made by the field inspector that the equal division of partnership profits is questioned. "NOW, THEREFORE, in consideration of the premises, the parties hereto covenant and agree with each other as follows: * * *
"2. That a full and correct accounting of all things, including but not limited to the real estate, machinery, plant, tools, stock in trade, materials and effects, has been ascertained * * *, and the said CECILE M. BOCK's share in and to the partnership assets * * * has been ascertained and agreed to be in the amount of Two Thousand ($2,000.00) Dollars, and that the said RICHARD GEORGE BOCK has agreed to pay such sum of money for the purchase of the said business. "3. That in consideration of the receipt of the aforementioned Two Thousand ($2,000.00) Dollars, CECILE M. BOCK does hereby transfer and assign all right, title and interest in the assets, including cash on hand, furniture and fixtures, records and other office equipment to become the sole property of RICHARD GEORGE BOCK * * *" The petitioner and Cecile were divorced on October 27, 1945. The *136 decree provided, inter alia, that Cecile was to be free to accept $50,000 in satisfaction of all her rights against the petitioner, including alimony, homestead, jointure, dower, court costs and solicitor's fees in accordance with the property settlement of October 1, 1945, which was incorporated therein by reference. Cecile assigned her interest in R. G. Bock Engineers to the petitioner. She received $50,000 in Government bonds as her property settlement on or about October 30, 1945. Forty thousand dollars of those bonds had been issued in the joint names of the petitioner and Cecile and $10,000 in the joint names of Cecile and their infant son. Cecile remarried. The joint capital account of the petitioner and Cecile on the books of R. G. Bock Engineers had a credit balance of $113,335.38 prior to entries made on September 30, 1945. Entries were made as of September 30, 1945, indicating that Cecile had withdrawn as a partner on that date and had been paid $50,000 as her share of the capital. The $50,000 was shown as Government bonds and accrued interest amounting to $49,259.49 plus the balance in a bank account of $740.51. Other entries on September 30, 1945, indicate that the petitioner *137 withdrew $13,335.38 on that date and that the remaining $50,000 in the capital account was then transferred to the petitioner. The petitioner never paid Cecile the $2,000 which he agreed in the articles of dissolution to pay her for her partnership interest. The petitioner did not include in his income for 1942, 1943, and 1944 any part of the partnership income reported by Cecile. The Commissioner determined that the partnership income reported in those years by Cecile is taxable to the petitioner. The petitioner and Cecile really and truly intended to join together for the purpose of carrying on the business as partners and Cecile is recognizable as a partner for income tax purposes. The petitioner and Cecile during the years 1942 to 1944 owned as joint tenants a 160-acre farm at Spooner, Wisconsin. The farm consisted of two barns and an old house with no modern sanitary facilities. A neighboring farmer cultivated 40 acres of the property and bore all expenses of that activity. The petitioner permitted him to farm the 40 acres in return for his acting as a caretaker. The remaining 120 acres contained a lake and some timber which was not being cut during the taxable years. *138 The farm has never been operated at a profit since the time of its purchase. The petitioner did not file a form 1040-F, schedule of farm income and expense, for the years 1941 to 1944, inclusive. The farm was purchased primarily to provide the petitioner with a retreat where he could study and relax. A study was added to the farm house some time after its purchase. The petitioner did not visit the farm regularly except in the summer, and it was referred to as a summer home in the property settlement entered into by the petitioner and Cecile at the time of their divorce. They used the farm as a place to entertain their friends, and on a few occasions clients and employees were also entertained. The income and expenses of the farm were reported in the partnership returns for 1942, 1943, and 1944 as follows: 1942
1943
1944
Income
$ 339.98
$236.34
Expenses
2,033.79
582.85
$1,003.66
Deductions for the years 1942, 1943, and 1944 were claimed by R. G. Bock Engineers in the amounts of $2,033.79, $582.85, and $1,003.66, respectively, as ordinary and necessary business expenses in connection with the Spooner farm. The deductions were disallowed by the respondent. *139 Five per cent of the expenditures were ordinary and necessary business expenses. The following deductions were claimed as ordinary and necessary business expenses in the partnership returns filed for R. G. Bock Engineers for 1942, 1943, and 1944: 1942
1943
1944
Automobile expenses
$ 853.56
$ 911.88
$1,113.55
Advertising and sales promotion
1,663.98
2,154.40
4,258.97
Entertainment and promotion
432.73
357.12
557.30
Christmas expense
381.40
1,136.89
1,042.64
Staff meeting expense
188.64
97.00
230.00
Association and club dues
654.50
836.49
880.03
Traveling expense
1,454.51
734.96
634.42
The respondent disallowed 20 per cent of the automobile expenses and 33 1/3 per cent of all other expenses as not constituting allowable deductions under section 23 of the Internal Revenue Code. The petitioner joined a country club in the Chicago area at his wife's insistence some time in 1942. The club is owned by one of the petitioner's principal competitors in the industrial engineering field. Cecile spent considerable time at the club during the years 1942 to 1944, inclusive, but the petitioner used it only a few times. *140 They entertained their friends and, on a few occasions, their clients at the club; but Cecile incurred most of the bills. The dues and bills paid to the country club were included in the amounts claimed as deductions for association and club dues. Not more than one-third of the expenditures for association and club dues were ordinary and necessary business expenses. The petitioner operated an automobile during the years 1942, 1943, 1944, which was used partly for business purposes and partly for nonbusiness purposes. The expenses of operating the vehicle for his personal use were not entered in the partnership books and were not claimed as deductions. Cecile also operated a vehicle during the taxable years, using it primarily in her war work. It was occasionally used for business purposes when the other automobile was unavailable. Not more than eighty per cent of the expenditures for the operation and maintenance of these automobiles were ordinary and necessary business expenses. The expenditures claimed as deductions for advertising and sales promotion, entertainment and promotion, Christmas expenses, staff meeting expenses, and traveling expenses were ordinary and necessary expenses *141 of the business. Opinion MURDOCK, Judge: The Commissioner has not recognized Cecile as a partner during the years here involved and contends that he was justified in so doing by the facts in this case viewed in the light of the principles now well established in Commissioner v. Tower, 327 U.S. 280; Lusthaus v. Commissioner, 327 U.S. 293, and Commissioner v. Culbertson, 337 U.S. 733. The petitioner argues that Cecile was a bona fide partner and the partnership was not created to avoid taxes and was in no sense a sham. The respondent called Cecile as a witness in an attempt to belittle the contribution which she made to the partnership by way of services. The formation of this partnership was not to save taxes and was not lacking in bona fides. The petitioner, who had some technical training and ability, had not been very successful for a number of years prior to the formation of this partnership. The business was based upon an idea suggested by Cecile and from the beginning was founded, developed, and expanded through their joint efforts. It is extremely doubtful whether the new business would have prospered if it had depended solely upon *142 the efforts of the petitioner. Cecile contributed valuable and even vital services to the partnership until the fall of 1939. She contributed services more valuable than she now realizes or is willing to admit. It is not momentous that the character of her services differed from those of her husband. Furthermore, it must be borne in mind that the petitioner did not perform any actual engineering services after 1939 so that the income of the taxable years was not attributable to his "personal services" as an engineer. Nor is it fatal to the petitioner's contention that their earnings were placed in a joint account. He explained that they had so little when they started that they didn't bother to maintain separate accounts, and while that explanation is not entirely satisfactory, nevertheless, Cecile had sufficient control over her share of the earnings. The evidence relating to the final property settlement is not a great aid to the petitioner, but it appears that Cecile got just about as much as she could considering her desire for a divorce and the condition of the business at that time. The conclusion has been reached, after considering all of the evidence, conflicting and ambiguous *143 as it sometimes is, that it preponderates in the petitioner's favor and shows that he and Cecile "really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both." The next question is whether the petitioner is entitled to deduct any of the farm losses. The Commissioner has disallowed them in toto. The petitioner has failed in his atatempt to show that the farming operations during these years were conducted for profit or that his intent to operate the farm for profit was frustrated by war conditions. He also has made an attempt to show that the expenses of maintaining the farm were ordinary and necessary expenses of the partnership business because the farm was used in connection with that business. The proof does not show that any business of the partnership was conducted on the farm during the taxable years. It appears that some employees and clients were entertained on the farm, but mostly it was maintained for the personal use and pleasure of the petitioner. An allocation between business and nonbusiness expense has been made following Cohan v. Commissioner, 39 Fed. (2d) 540 [2 ustc [489], and *144 a deduction has been allowed based upon that allocation The Commissioner disallowed one-third of all amounts claimed by the partnership as deductions for advertising and sales promotion, entertainment and promotion, Christmas expenses, staff meeting expenses, association and club dues, and traveling expenses. The basis of his disallowance is not clear. The petitioner introduced evidence to show that the amounts had actually been expended and properly accounted for on the books of the partnership. He volunteered no detail as to the purpose of the various expenditures. The respondent cross-examined only on several items claimed as deductions for Christmas expenses and association and club dues. The amounts claimed are not large in relation to the sales and income of the business. The evidence as a whole slightly preponderates in favor of the petitioner and it is held that the Commissioner erred in disallowing one-third of those particular deductions, except the association and club dues. The deductions claimed for association and club dues included dues and bills paid in substantial amounts to a country club used largely for pleasure by Cecile. The evidence does not show that the Commissioner *145 erred in disallowing one-third of those items. The Commissioner disallowed 20 per cent of the amounts claimed as automobile expenses. He is not shown to have been in error. The expenses related to two automobiles - one apparently used by each spouse. There is no basis for allocating the expenses between the two cars. The petitioner concedes that he used his car for both business and nonbusiness purposes but stated that the amounts expended for nonbusiness purposes were never entered in the partnership books. The other automobile was operated by Cecile largely for nonbusiness purposes. The evidence does not show that the Commissioner erred in disallowing 20 per cent of the total amount claimed for automobile expenses. Decision will be entered under Rule 50. Footnotes
*. Written in pencil.↩